[L. A. No. 23973.   In Bank.   Apr. 27, 1956.]

COUNTY OF SAN BERNARDINO, Respondent, v. RUTH SIMMONS, Appellant.

James E. Walker for Appellant.

Albert E. Weller, County Counsel, Margaret J. Morris and J. B. Lawrence, Deputy County Counsel, for Respondent.

SCHAUER, J.—Plaintiff county paid old age security to Henry Simmons. It brought this action against his adult daughter to recover a portion of the amount so paid. Its first cause of action is, as stated in section 2224 of the Welfare and Institutions Code, "to recover for said county such portion of the aid granted as said relative is able to pay, and to secure an order requiring the payment of any sums which may become due in the future for which the relative may be liable." Its second cause of action is based on the asserted subrogation of the county to the right of the parent under the provision of section 206 of the Civil Code that

"It is the duty of . . . the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability."

The trial court announced that it sustained an objection to the introduction of evidence as to the first cause of action. Judgment was for plaintiff for $140 upon the second cause of action. Defendant appeals; plaintiff does not.

Since the county does not complain of the ruling as to the first cause of action[1] there is no need to discuss defendant-appellant's arguments as to why she considers that the decision of the trial court as to that cause of action was correct. As to the second cause of action we have concluded that the trial court was mistaken in accepting the county's theory that it could recover derivatively under section 206 of the Civil Code.

*The Applicable Sections of the Civil Code and the Welfare and Institutions Code.* ▆ Section 206 of the Civil Code provides, as it has since its enactment in 1872, that "It is the duty of the father, the mother, and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability. The promise of an adult child to pay for necessaries previously furnished to such parent is binding." This statute authorizes a "general action addressed to the equitable powers of the court" by the poor person against the relative. (*Tuller* v. *Superior Court* (1932), 215 Cal. 352, 355 [10 P.2d 43].)

The Welfare and Institutions Code sets out what appears on the face of that code to be a complete procedure for recovery by the county, when it pays aid to a needy aged person, from a spouse or adult child[2] who is able to support the aged person. At the time here material section 2181 of the Welfare and Institutions Code (as am.Stats. 1st Ex.Sess. 1950, ch. 22, § 1, p. 463) provided in material part that on receipt of an application for old age security the board of supervisors shall "determine the ability of responsible relatives to contribute to the support of applicant. . . . The

---

[1] Respondent states, "The decision of the trial Court striking our first cause of action has not been appealed, and our second cause of action stands alone as if the first had never existed."

[2] Apparently the Legislature in adopting the Welfare and Institutions Code thought that the probability of a needy aged person having a surviving parent or a minor child able to contribute to his support was so slight that it did not include provision for recovery from such relatives, although Civil Code, section 206, purports to make them responsible for his support.

maximum degree of liability of the responsible relative shall be determined by 'Relatives' Contribution Scale.' [The scale is set out in the section.] In determining ability to contribute, the financial circumstances of responsible relatives shall be given due consideration and, in unusual cases, contributions at less than the amount fixed by 'Relatives' Contribution Scale' may be made as the board of supervisors may deem justifiable. A married daughter of the applicant shall not be required to make contributions unless she has income constituting her separate property. . . ."

Section 2224 of the Welfare and Institutions Code (as am. Stats. 1945, ch. 1319, § 2, p. 2474) provided, ". . . If the person receiving aid has within the State, a spouse or adult child found by the board of supervisors pecuniarily able to support said person, the board of supervisors shall request the district attorney . . . to proceed against such kindred . . . [T]he district attorney . . . shall, on behalf of said county, maintain an action, in the superior court of the county granting such aid, against said relative . . . to recover for said county such portion of the aid granted as said relative is able to pay. . . ."

*The Claim of Subrogation.* The trial court found the following facts from which it concluded that defendant owed the county the duty to reimburse the county for $140 contributed to the father's support: From December 15, 1952, to July 15, 1953, defendant had property and earning ability sufficient to enable her to pay $20 a month for the support of her father. During this time the father was a poor person unable to maintain himself by work. The father during this time received from the county $80 a month as old age security.

Plaintiff's argument is as follows: The obligation of the child to support the poor parent under section 206 of the Civil Code is "preexistent to and independent of the aid granted to the needy aged by public authorities" (quoting from *Kelley* v. *State Board of Social Welfare* (1947), 82 Cal.App.2d 627, 632 [186 P.2d 429], a case which contains statements upon which, as will appear, doubt was cast by *County of Contra Costa* v. *Lasky* (1954), 43 Cal.2d 506, 509 [275 P.2d 452]) ; the county performed the child's duty under section 206; and the county is therefore subrogated to the parent's right against the child under section 206.

■ There is nothing in section 206 which suggests an intention to create a liability of the child of poor parents to public agencies which support the parents in accord with their law-imposed duty to pay aid to such parents; the only liability to third persons is in the case of the promise of an adult child expressly referred to in the last sentence of the section. ■ On the other hand, the Welfare and Institutions Code (particularly applicable here are §§ 2181, 2224, hereinabove quoted; see also § 2011) not only purports to state the circumstances in which the named responsible relatives are liable to the county when it has supported or paid aid to indigents, aged, blind, etc.,[3] but also states a procedure by which in proper cases the county can recover from the responsible relatives. It seems apparent, therefore, that the Legislature intended, by the Welfare and Institutions Code, to cover completely the subject of recovery by public agencies from responsible relatives, and that it did not intend to create, and that there is no proper basis for the courts to innovate, a right of recoupment derived from section 206 of the Civil Code.

On this subject it is said in *County of Contra Costa* v. *Lasky* (1954), *supra,* 43 Cal.2d 506, 509, ''There is a conflict in the cases as to whether the basic liability of responsible relatives is section 206 of the Civil Code or the provisions of the Welfare and Institutions Code. It has been held that the latter code provisions are complete in themselves and the liability of responsible relatives to the county is thereby established. (*County of Lake* v. *Forbes* (1941), 42 Cal.App.2d 744 [109 P.2d 972]; *County of Los Angeles* v. *Lane* (1952), 113 Cal.App.2d 476 [248 P.2d 479]; *County of Los Angeles* v. *La Fuente* (1942), 20 Cal.2d 870 [129 P.2d 378].) Seemingly to the contrary are *Garcia* v. *Superior Court* (1941), 45 Cal.App.2d 31 [113 P.2d 470], and *Kelley* v. *State Board of Social Welfare* (1947), 82 Cal.App.2d 627 [186 P.2d 429].

---

[3]The Welfare and Institutions Code provides for recovery by the county or state from financially able responsible relatives of persons who have received aid or been maintained not only because they are aged (§§ 2181, 2224) but also because they are indigent (§ 2576), blind (§ 3088), mentally disordered, (§§ 5077, 6650), feeble-minded (§ 5260), narcotic drug addicts (§ 5356), inebriates (§§ 5402.5, 5404), sexual psychopaths (§ 5516), or mentally abnormal sex offenders (§ 5606). The system for such recovery from responsible relatives provided in the Welfare and Institutions Code, although not altogether coherent, manifestly purports to cover the entire subject.

Although it is not important in this case,[4] we believe the matter is adequately covered by the Welfare and Institutions Code and it is the measure of the extent of the responsible relative's liability to the county. It is to it we must look to ascertain whether the relative is required, in a particular case, to reimburse the county.'' █ We reiterate the declaration of the last quoted sentence as a holding, and any inconsistent implications in the Garcia and the Kelley cases are disapproved.

Plaintiff points out that, as stated in *Ashland County Comrs.* v. *Richland County Infirmary* (1857), 7 Ohio St. 65 [70 Am.Dec. 49, 51], there are decisions in other jurisdictions which ''proceed on the principle that the sufferings of paupers and of indigent persons shall be relieved by the townships where they may be found in their destitute conditions, and that advancements made for such purposes are justly chargeable in equity and conscience to the person . . . whose relation towards the pauper or indigent person creates a duty or imposes the necessity of furnishing aid, and that the obligation when neglected or disregarded by those who should perform it may be enforced in favor of whomsoever grants the relief as for money paid out and expended for another's benefit.'' (*County of Jaspar* v. *Osborn* (1882), 59 Iowa 208 [13 N.W. 104]; *McCook County* v. *Kammoss* (1895), 7 S.D. 558 [64 N.W. 1123, 58 Am.St.Rep. 854, 31 L.R.A. 461]; *Tryon* v. *Town of Moyer* (1915), 130 Minn. 198 [153 N.W. 307]; *Bismarck Hospital & D. Home* v. *Harris* (1938), 68 N.D. 374 [280 N.W. 423, 116 A.L.R. 1274, 1277].) We do not find the theory of those cases persuasive here, for in none of them, so far as the reports show, was there a statutory system such as that of the Welfare and Institutions Code which purported to set up a system of public agency direct responsibility and to cover the subject of recovery from responsible relatives of aid paid by the political subdivision. (See generally, citing cases from other states with other statutory provisions for recovery of old age assistance, Anno., 29 A.L.R.2d 731.)

█ The following argument of defendant furnishes a further reason for holding that there is no right of the county to recover from the child of a poor parent under section 206

---

[4]The matter was "not important in this [Contra Costa] case" because the county did not there insist, as does the county here, that it had a right under section 206 of the Civil Code independent of the Welfare and Institutions Code.

of the Civil Code: The county is required by the Welfare and Institutions Code to pay aid to the aged who are "in need" (Welf. & Inst. Code, §§ 2001, 2022). The sections which set out the amount of aid allowed[5] and the resources which an aged person may own without being disqualified from receiving aid,[6] delineate the financial situation of one who is considered "in need." Manifestly, this is not the same as being "poor" and "unable to maintain himself by work" (Civ. Code, § 206). The county is required to pay old age security to persons who, although they are "in need" according to the Welfare and Institutions Code, have considerable income and property, and who may be able to maintain themselves by work. The payment of old age security, therefore, cannot be considered to be the performance of a duty to support a poor person unable to maintain himself by work, and the theory of subrogation (see *Sanders* v. *Magill* (1937), 9 Cal.2d 145, 150 [70 P.2d 159]; *Fireman's etc. Co.* v. *State Comp. Ins. Fund* (1949), 93 Cal.App.2d 408, 412 [209 P.2d 55]) is inappropriate.

For the reasons above stated, the judgment appealed from is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

Respondent's petition for a rehearing was denied May 23, 1956.

---

[5]Section 2020 of the Welfare and Institutions Code now provides that the amount of aid to which an applicant is entitled is "when added to the income (including the value of currently used resources, but excepting casual income and inconsequential resources) of the applicant from all other sources" $85 a month, or a greater amount if "actual need" is greater.

[6]He may own personal property valued at $1,200 (Welf. & Inst. Code, § 2163) and real property of an assessed value of as much as $3,500 (Welf. & Inst. Code, § 2164). He may own future interests of unlimited value (Welf. & Inst. Code, § 2163.1) and personal effects, clothing, furniture, household equipment, food, fuel, and personal jewelry of unlimited value (Welf. & Inst. Code, § 2163.2).